1  Roy Herrera (No. 032901)
2  Daniel A. Arellano (No. 032304)
   Austin T. Marshall (No. 036582)
3  **HERRERA ARELLANO LLP**
4  530 East McDowell Road, Suite 107-150
   Phoenix, Arizona 85004-1500
5  Telephone: (602) 567-4820
6  roy@ha-firm.com
   daniel@ha-firm.com
7  austin@ha-firm.com

8  Elisabeth Frost *(pro hac vice)*
9  David Fox *(pro hac vice)*
   Harleen K. Gambhir *(pro hac vice)*
10 Tina Meng *(pro hac vice)*
11 Marcos Mocine-McQueen *(pro hac vice)*
   **ELIAS LAW GROUP LLP**
12 10 G Street NE, Suite 600
13 Washington, D.C. 20002
   Telephone: (202) 968-4490
14 Facsimile: (202) 968-4498
15 efrost@elias.law
   dfox@elias.law
16 hgambhir@elias.law
17 tmeng@elias.law
   mmcqueen@elias.law
18
19 *Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Alliance for Retired Americans; Voto Latino, | No. CV-22-01823-PHX-MTL |
| Plaintiffs, | |
| v. | **EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL** |
| Clean Elections USA; Melody Jennings; Doe Defendants 1-10, | **(EXPEDITED CONSIDERATION WITHOUT ORAL ARGUMENT REQUESTED)** |
| Defendants. | |

## INTRODUCTION

Plaintiffs Arizona Alliance for Retired Americans and Voto Latino respectfully move this Court for an injunction pending appeal under Federal Rule of Civil Procedure 62(d).

On October 28, 2022, the Court denied Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction. Doc. 32. Plaintiffs have filed a Notice of Appeal. Doc. 34. While Plaintiffs acknowledge that the Court just denied their Motion for a Temporary Restraining Order and Preliminary Injunction under a similar legal standard, Plaintiffs request, consistent with Fed. R. App. P. 8(a)(1), that this Court issue an order entering Plaintiffs' requested injunction during the pendency of the appeal, to prevent irreparable harm that cannot be undone after the election. Because time is of the essence given that voting in Arizona is ongoing, Plaintiffs request that the Court rule on this motion as soon as possible, summarily if necessary. Given the severe risk of irreparable harm if immediate relief is not granted, Plaintiffs plan to seek emergency relief from the Ninth Circuit by the end of the day today, October 28, even if this Court has not yet ruled on this motion. Plaintiffs will of course note in that motion if this motion remains pending with this Court.

## LEGAL STANDARD

Under Rule 62(d), a court may grant an injunction while an appeal is pending from an interlocutory order or final judgment that refuses an injunction. The Court's decision whether to grant such a motion is guided by four factors: (1) whether the applicant makes a strong showing of likely success on the merits; (2) whether the applicant will be irreparably harmed absent relief; (3) whether issuing relief will substantially injure other parties; and (4) where the public interest lies. *Lair v. Bullock*, 697 F.3d 1200, 1203 (9th Cir. 2012); *see also Se. Ala. Conservation Council v. U.S. Army Corps of Eng'rs.*, 472 F.3d 1097, 1100 (9th Cir. 2006). Although "'[t]here is substantial overlap between these and the factors governing preliminary injunctions,'" *Lair*, 697 F.3d at 1203 n.2 (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)), several courts have recognized that "[c]ommon sense

dictates . . . that the standard cannot . . . require that a district court confess to having erred in its ruling" to grant the motion. *Evans v. Buchanan*, 435 F. Supp. 832, 843 (D. Del. 1977); *Canterbury Liquors & Pantry v. Sullivan*, 999 F. Supp. 144, 149 (D. Mass. 1998). An injunction pending appeal is appropriate if movants demonstrate serious questions going to the merits on appeal and the balance of the hardships tips sharply in their favor. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011) (holding "serious questions" test for preliminary injunctions and stays pending appeal survives *Winter v. Nat. Resources Def. Council*, 555 U.S. 7 (2008)).

## ARGUMENT

For the reasons set forth by Plaintiffs in the preliminary injunction proceedings, which are hereby incorporated by reference, the relevant factors weigh strongly in favor of issuing an injunction pending appeal.

**I.     Plaintiffs have shown a likelihood of success, and at minimum have raised serious questions going to the merits.**

In their motion for a temporary restraining order and preliminary injunction, Plaintiffs principally argued that Defendants' activities to organize and promote the targeting of drop box voters by gathering in large groups to surveil and intimidate voters is a strategy that is directly prohibited by Section 11(b) of the Voting Rights Act, 52 U.S.C. § 10307(b), and by the Ku Klux Klan Act of 1871 (the "Klan Act"), 42 U.S.C. § 1985(3). Though the Court denied their motion for a temporary injunction and/or preliminary injunction, Plaintiffs maintain they are likely to succeed on appeal for the reasons stated in that motion and at the hearing before the Court. *See* Doc. 2. Simply put, Defendants' actions are textbook violations of both Section 11(b) and the Klan Act.

**A.     Plaintiffs have demonstrated a likelihood of success as to their Section 11(b) claim.**

The Court held that it could not craft an injunction to remedy Plaintiffs' injury under Section 11(b) without violating the First Amendment. *See* Doc. 32 at 6-10. This is an argument that Defendants made orally at the hearing; they declined to file a brief in

opposition to Plaintiffs' motion for temporary restraining order and/or preliminary injunction, and Plaintiffs did not preemptively brief the issue because the First Amendment constitutes an affirmative defense in this context. *See Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 964 (9th Cir. 2004). But as Plaintiffs' counsel explained at the hearing before the Court, Defendants' actions are not protected by the First Amendment. Most of Defendants' conduct is not expressive at all. To the extent any of it is expressive, moreover, it amounts to incitement or true threats, neither of which are protected by the First Amendment. Finally, even if Defendants' actions constituted protected expression, the government has a compelling interest in protecting voters against intimidation, and the requested injunction is specifically directed at the very conduct that Defendants have been engaging in that the record demonstrates *is* in fact intimidating Arizona voters. As a result, the relief requested is narrowly tailored to serve a compelling state interest, and therefore satisfies strict scrutiny.

**1. Most of Defendants' conduct is not expressive.**

Unlike pure speech such as social media posts (which Plaintiffs address below), conduct is expressive only if there is "[a]n intent to convey a particularized message" and "the likelihood [is] great that the message w[ill] be understood by those who view [] it." *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1058-59 (9th Cir. 2010) (quoting *Spence v. State of Wash.*, 418 U.S. 405, 409-11 (2010)) (alterations in original). "[I]ndividuals claiming the protection of the First Amendment must carry the burden of demonstrating that their nonverbal conduct meets the applicable standard." *Knox v. Brnovich*, 907 F.3d 1167, 1181 (9th Cir. 2018). Defendants, *who offered no evidence at all*, including any evidence demonstrating that they and the drop box watchers who have acted in concert with them intend to express any message—much less a particularized one—have not carried that burden here. To be sure, the record suggests that Defendants' conduct has a *purpose*: they intend to stop people from using drop boxes. But the First Amendment protects only expression; Defendants have no First Amendment right "to succeed in their ultimate goal" through non-expressive means. *Voting for Am. v. Steen*, 732

F.3d 382, 391 (5th Cir. 2013) (quotation omitted). And even if Defendants did intend to express some particularized message by watching and recording drop boxes, Defendants offered no evidence that their conduct of gathering in groups near drop boxes and conspicuously recording them "would reasonably be understood by viewers as conveying any of these messages or conveying a symbolic message of any sort." *Knox*, 907 F.3d at 1181.

Defendants' use of photography and video recording does nothing to change this, because the mere taking of photographs and video, without more, does not trigger First Amendment protection. *See Porat v. Lincoln Towers Cmty. Ass'n*, No. 04 Civ. 3199 (LAP), 2005 WL 646093, at *5 (S.D.N.Y. Mar. 21, 2005), *aff'd*, 464 F.3d 274 (2d Cir. 2006). Rather, photography and videography are protected only where they exist to communicate some idea, such as an artistic expression or the need for good government. *Id.* at *4-5; *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1044 (9th Cir. 2018) (explaining that filming public officials is protected by the First Amendment). Here, Defendants and their supporters use cameras not to express a message *but simply to make persons uncomfortable using drop boxes*. And as explained below, the use they make of the resulting photos is not protected expression either—it consists of unprotected true threats.

### 2. Any expressive components of Defendants' actions consist of incitement or true threats, which are not protected by the First Amendment.

Defendants' use of speech to organize and implement their campaign of unlawful voter intimidation is also unprotected by the First Amendment because the Constitution "lends no protection to speech which urges the listeners to commit violations of current law." *United States v. Kelley*, 769 F.2d 215, 217 (4th Cir. 1985) (citing *Brandenburg*, 395 U.S. 444). "[W]here speech is so close in time and substance to ultimate criminal conduct, [] no free speech defense is appropriate." *United States v. Freeman*, 761 F.2d 549, 551 (9th Cir. 1985) (Kennedy, J.); *see also Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949) (finding that the First Amendment does not "extend[] its immunity to speech or

writing used as an integral part of conduct in violation of a valid criminal statute.").

Similarly, Defendant Jennings' posting of photographs and personal information about voters, and the actual activities of drop box watchers, to the extent they are expressive at all, are "true threats" unprotected by the First Amendment. The First Amendment does not protect against "true threats," which reflect "an intention to inflict evil, injury, or damage on another." *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1075 (9th Cir. 2002), *as amended* (July 10, 2002); *see also Virginia v. Black*, 538 U.S. 343, 359 (2003) (true threats include statements that express an intent to commit unlawful violence on others). This exception to the First Amendment is intended to "protect individuals . . . from the fear of violence" and "from the disruption that fear engenders," as well as "from the possibility that the threatened violence will occur." *Virginia*, 538 U.S. at 359–60.

The Court's Order concludes that Defendant Jennings' social media posts cannot reasonably be understood as true threats. Doc. 32 at 8-9. But the circumstances of this case are far more extreme than others in which Defendants' actions were found to constitute a true threat. For example, the Southern District of New York held in *National Coalition on Black Civic Participation v. Wohl* ("*Wohl I*") that robocalls which threatened voters with negative consequences for voting by mail constituted unprotected "true threats" in addition to violating the Voting Rights Act. 498 F. Supp. 3d 457, 478 (S.D.N.Y. 2020). Here, Defendant Jennings' calls for mobilization have caused groups, some armed, to physically station themselves near drop boxes. Both voters and local and state election officials have perceived Defendants' conduct as harassment and intimidation that reasonably places voters in fear of harm. And for good reason—Defendant Jennings has publicly threatened to dox persons caught on camera by her "beautiful box watchers." *See* Doc. 2 at 8-9. And she has personally posted photos of persons who have been spotted using drop boxes in Arizona, as well as photos of individuals' license plates. Doc. 3 at 29, 70. Election officials similarly targeted in 2020 have been subject to death threats, with many quitting their jobs out of fears for their personal safety. *See* Doc. 1 at ¶ 6. This cycle, Secretary Hobbs has

received similar threats. Doc. 19-4. An injunction against Defendants' monitoring, photographing, recording, or doxing persons using drop boxes therefore does not implicate Defendants' First Amendment rights.

### 3. The requested injunction satisfies strict scrutiny.

Even if Defendants' actions constituted protected expression, Plaintiffs' requested injunction is narrowly tailored to serve a compelling interest in preventing voter intimidation and therefore satisfies strict scrutiny. In a public forum, "[f]or a state to enforce a content-based exclusion, it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983) (citations omitted). In the election law context, a regulation satisfies narrow tailoring so long as the state's "response is reasonable and does not significantly impinge on constitutionally protected rights." *Burson v. Freeman*, 504 U.S. 191, 209 (1992) (quoting *Munro v. Socialist Workers Party*, 479 U.S. 189, 195 (1986)).

As this Court recognizes, "states have a compelling interest in maintaining the integrity of the polling place and preventing voter intimidation and confusion." Doc. 32 at 12 (citing *Burson*, 504 U.S. at 198). Plaintiffs' requested injunction is narrowly tailored to prevent an ongoing, worsening firestorm of voter intimidation in Arizona. The requested injunction is directly tailored to Defendants' conduct, which the record establishes has in fact been intimidating Arizona voters. For instance, it prohibits Defendants from "training, organizing, encouraging, or directing others" to monitor drop boxes, record voters, disseminate images or personal information of voters, or harass or verbally engage with individuals returning a ballot. Doc. 20-1 at 1-2. There is ample evidence that Defendants are in fact encouraging individuals to intimidate voters at drop boxes. Doc. 2 at 7-12.

The requested injunction then prohibits Defendants "and all persons in active concert or participation with them" from gathering in groups of more than 2 within 250 feet of drop boxes; from following, photographing, or otherwise recording voters; from disseminating voters' images or personal information; or from harassing voters. Doc. 20-1

7

at 2. The record demonstrates that Defendants' supporters are gathering in groups near drop boxes, following and recording voters and their license plates, and posting the material online. Doc. 2 at 9-12; *see also* Doc. 32 at 2-3. Courts have entered similar injunctions for analogous violations of Section 11(b), without raising any First Amendment concerns. *See, e.g., CAIR v. Atlas Aegis*, 497 F. Supp. 3d 371, 381 (D. Minn. 2020) (enjoining a private security company and its chairman from "deploying armed agents within 2,500 feet of Minnesota polling places or otherwise monitoring Minnesota polling places," threatening to deploy such agents, or "otherwise intimidating, threatening, or coercing voters in connection with voting activities in Minnesota").

Finally, the requested injunction requires CEUSA to post the order on its website and requires Jennings to post the order to her Truth Social page daily until the election. Doc. 20-1 at 2. This type of curative message is a permissible remedy for violations of Section 11(b) and the Support or Advocacy Clause. *See Wohl I*, 498 F. Supp. 3d at 489-90 (prohibiting political organization and its founders from "engaging in, or causing anyone else to engage in, robocalls or similar forms of communications" without consent or court approval, and also ordering defendants to send a curative robocall message to all recipients of the intimidating call).

Accordingly, Plaintiffs' requested injunction does not infringe upon Defendants' First Amendment rights. Plaintiffs have demonstrated a likelihood of success as to their Section 11(b) claim.

**B.  Plaintiffs have demonstrated a likelihood of success as to their Support or Advocacy Clause claim.**

The Court also held that Plaintiffs did not show a likelihood of success on their claim under the Support or Advocacy Clause of the Klan Act because they had not "provided the Court with evidence that Defendants intend to prevent lawful voting." Doc. 32 at 11. But there is no indication that the Support or Advocacy Clause's intent requirement is specifically tied to the purpose of preventing *lawful* voting. Rather, the standard as articulated in *Wohl I* links the intent requirement to the intent to use "force,

intimidation, or threat," which is clearly present in this case. *See* 498 F. Supp. 3d at 486-87. Further, as the Court recognized, the Defendants justify their activities based on thoroughly debunked conspiracy theories. It cannot possibly be that individuals may harass and intimidate voters with impunity based on objectively unreasonable, baseless beliefs that certain voters are not legally permitted to vote.

### C. At minimum, Plaintiffs have raised "serious questions" that merit an injunction pending appeal.

At a minimum, Plaintiffs have raised "serious questions" as to what scope of relief is appropriate to remedy harm under Section 11(b) pursuant to constitutional protections under the First Amendment. Serious questions are "substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988). They are questions "to which the court perceives a need to preserve the status quo lest one side prevent resolution of the questions or execution of any judgment by altering the status quo." *Id.*

The passage of time will thwart the proper resolution of the compelling issues Plaintiffs raised which warrant a "more deliberative investigation" on appeal. The Court should preserve Plaintiffs' right to litigate these "substantial" and "difficult" issues on appeal without the loss of constitutionally protected voting rights. At the very least, Plaintiffs have raised a serious legal question. For the reasons discussed in their prior briefing and at oral argument, the equities, including the irreparable harm they will suffer absent an injunction pending appeal, and the public interest, all strongly favor issuing the requested relief.

## II. Plaintiffs will suffer irreparable harm without an injunction pending appeal.

Absent an injunction, Plaintiffs will suffer irreparable harm. First, because voting is ongoing and because voters are presently being intimidated, absent immediate injunctive relief, Plaintiffs will lose their right to a meaningful appeal. Courts have found that the loss of the right to appeal constitutes irreparable harm. *See Big Lagoon Rancheria v. California*,

No. C 09–1471 CW, 2012 WL 298464, at *5 (C.D. Cal. Feb. 1, 2012); *Gonzalez v. Reno*, No. 00–11424–D, 2000 WL 381901, at *1 (11th Cir. Apr.19, 2000); *Population Inst. v. McPherson*, 797 F.2d 1062, 1081 (D.C. Cir. 1986).

Second, for the reasons Plaintiffs stated in their motion for a temporary restraining order and preliminary injunction, absent an injunction barring Defendants from intimidating voters Plaintiffs, their members, and countless other Arizona voters will suffer irreparable harm. *See, e.g.*, *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"). Indeed, the Court's order acknowledged that "this factor tips in Plaintiffs' favor." Doc. 32 at 11.

**III. The balance of hardships tips sharply in Plaintiffs' favor and the injunction pending appeal is in the public interest.**

For the reasons stated in Plaintiffs' motion for a temporary restraining order and preliminary injunction, the equities and the public interest favor an injunction pending appeal.

## CONCLUSION

For the reasons above, the Court should grant Plaintiffs' Emergency Motion for Injunction Pending Appeal.

Dated: October 28, 2022

Respectfully submitted,

*/s/ Daniel A. Arellano*
Roy Herrera (No. 032901)
Daniel A. Arellano (No. 032304)
Austin T. Marshall (No. 036582)
**HERRERA ARELLANO LLP**

530 East McDowell Road, Suite 107-150
Phoenix, Arizona 85004-1500

Elisabeth Frost *(pro hac vice)*
David Fox *(pro hac vice)*
Harleen K. Gambhir *(pro hac vice)*
Tina Meng *(pro hac vice)*
Marcos Mocine-McQueen *(pro hac vice)*
**ELIAS LAW GROUP LLP**
10 G Street NE, Suite 600
Washington, D.C. 20002

*Counsel for Plaintiffs*