
Alexander Kolodin (SBN 030826)
Veronica Lucero (SBN 030292)
**Davillier Law Group, LLC**
4105 N. 20th St. Ste.110
Phoenix, AZ 85016
Phone: (602) 730-2985
Fax: (602) 801-2539
Emails:
Akolodin@davillierlawgroup.com
Vlucero@davillierlawgroup.com
Phxadmin@davillierlawgroup.com (file copies)

*Attorneys for Defendants Clean Elections USA and Melody Jennings*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Alliance for Retired Americans; *et al.*,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>Clean Elections USA; *et al.*,<br><br>　　　　　Defendants.<br>--------------------------------------------------<br>League of Women Voters of Arizona;<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Lions of Liberty LLC; *et al.*,<br><br>　　　　　Defendants. | CASE NO: CV-22-01823-PHX-MTL<br><br>CV-22-08196-PCT-MTL<br>(Consolidated)<br><br><br>**BENCH BRIEF REGARDING REMAINING AREAS OF DISAGREEMENT<br>AND<br>NOTICE OF LODGING OF PROPOSED FORM OF ORDER** |

Defendants and Plaintiffs met and conferred pursuant to this court's order to see if they could reach agreement. Prior to this conferral, undersigned counsel submitted the attached proposed form of order and indicated that, although he had not conferred with the client, he believed it would be acceptable to his clients if acceptable to Defendants, in full. Though there were several areas of agreement, Defendants insisted on additional terms.

The parties continue to work towards a resolution. However, Plaintiffs reserve the right oppose the relief defendants seek in full. Even in such an instance, however, should this Court be inclined to enter some form of injunction, Plaintiffs propose the attached proposed order be used in lieu of what has been submitted by Defendants.

The major terms on which Plaintiffs and Defendants were unable to reach agreement are listed in Section I, below, along with Defendants' briefing and analysis of why these terms do violence to the constitution.

Plaintiff and Defendants' respective positions as to each item in Defendants' proposed order, on which the parties largely agreed, are as set forth in Section II (proposed order language in bold, positions of the parties in regular font).[1]

## SECTION I
### PLAINTIFFS' PROPOSED MAJOR TERMS NOT AMENABLE TO DEFENDANT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' POSITION

**I.     The "Correction" and prior restraint.**

Plaintiffs insisted on (a) requiring Defendant Jennings to retract a prior statement they viewed as false and (b) the entry of a prior restraint enjoining her from making such comments in the future.

---

[1] Defendants' recitation of Plaintiffs' position is based on counsel's recollection and notes and counsel regrets any error.

Defendants' position is that this cannot be squared with the First Amendment. The allegedly false statement was that "Arizona law allows voters to deposit "only one [ballot] for you and your spouse." Supp. Br. 3:8-23. However, upon undersigned counsel's review, this is not a false statement of the law so much as an incomplete one. Defendant Jennings was correct in noting that the default rule in Arizona is that an individual may only return one ballot. *See* ARS 16-1005(H) ("A person who knowingly collects voted or unvoted early ballots from another person is guilty of a class 6 felony."). There are, as the Court noted, exceptions to the rule. In addition to the exception for spouses that Defendant Jennings referenced, there are, for example, also exceptions for those who deliver the ballots of family members, household members, or caregivers. *Id*. at (I). To require that Defendant Jennings, a non-lawyer, correctly state both the rule and the exceptions and then to issue a prior restraint requiring that every time that she speaks about the law she must correctly state both the rule **and the exceptions**, does violence to the First Amendment by holding her, and all non-lawyers, to standards of discourse they cannot possibly meet when speaking about an issue that goes to the core of the First Amendment – the administration of elections. Defendants' position is that Defendant Jennings cannot be required to state the rule and the exceptions fully or perfectly every time she speaks about the issue of ballot harvesting, that a Court cannot force her to retract a prior statement was correct but incomplete, and that prominent postings which more fully state the rule, as set forth in Defendant's proposed order, should be sufficient to "remedy" any harm. And even had her statement been categorically false, which it was not, it would still be entitled to protection unless Plaintiffs could prove that it was uttered with the **intent** to intimidate lawful voters. *See Nat'l Coal. on Black Civic Participation v. Wohl*, 512 F. Supp. 3d 500, 514 (S.D.N.Y. 2021) (entering an injunction because, though the Second Circuit had not decided whether intent was required for a true threat, Plaintiffs had established that "Defendants *intended* the robocall to harm Democrats by suppressing turnout among Black voters."). **Unlike the Second Circuit, however, the**

**Ninth Circuit expressly requires both subjective and objective intent to find a constitutionally unprotected true threat**.

In *United States v. Bagdasarian*, the 9th Circuit reversed the conviction of a defendant "found guilty on two counts of making the following statements on an online message board two weeks before the [2008] presidential election: (1) 'Re: Obama fk the niggar, he will have a 50 cal in the head soon' and (2) 'shoot the nig.'" 652 F.3d 1113, 1115 (9th Cir. 2011). The *Bagdasarian* court opined that "[t]hese statements are particularly repugnant because they directly encourage violence." *Id*. Nonetheless, it held that "[a] statement that the speaker does not intend as a threat is afforded constitutional protection and cannot be held criminal" and that these statements did not constitute threats beyond the ambit of First Amendment protection, regardless of what a statute might say. *Id*. at 1122. The *Bagdasarian* Court further explained that for a statement to constitute a threat beyond the protection of the First Amendment also requires that objective intent to threaten be evident from the face of the statement. *Id*.

Otherwise, even though "false statements that discourage people from exercising the right to vote could conceivably be exempted from First Amendment protection altogether, **the Supreme Court has not crafted such an exemption**." *Nat'l Coal. on Black Civic Participation v. Wohl*, 498 F. Supp. 3d 457, 478 (S.D.N.Y. 2020) (emphasis supplied). How much more so must a merely incomplete statement of law by a non-lawyer covered by the First Amendment?

Further, any requirement that Defendant Jennings refrain from making incomplete or false statements of the law in the future is too vague and undefined to past first amendment muster. *See List Indus. v. List*, 2017 U.S. Dist. LEXIS 139671, at *12 (D. Nev. Aug. 30, 2017) ("The preliminary injunctive relief requested here cannot be granted because it would constitute an unconstitutional prior restraint on speech that is both overbroad and vague."). She is not a lawyer and could not even be reasonably expected to know when she is transgressing such an injunction. Nor can she be required to give the

rule and all exceptions when discussing the law in public forums far removed from the courthouse. Not even lawyers always give the full rule and the exceptions when discussing the law in everyday discourse on social media.

**II.     The Ban on photography and public discussion of the individuals photographed.**

Plaintiffs additionally continue to insist on a ban on photographing individuals and vehicles, even from a 75 foot distance and discussing those individuals online. They claim that they are likely to prevail in showing that such photography violates the Voting Rights Act and the Klu Klux Klan Act. These exact same claims have been adjudicated before.

In *Ariz. Democratic Party v. Ariz. Republican Party*, Plaintiff Arizona Democratic Party "ADP" filed suit to enjoin a program of poll observation, relying on the exact same laws at issue in this case. The ADP claimed that Defendants' statements encouraging people to conduct "exit polls" and "to be present and observe the activities of other voters at polling places, to follow other voters and interrogate them as to their votes, to record other voters' license plates, to photograph and video-record other voters, and to call 911 if they suspect someone has engaged in voter fraud constitute at least an attempt to intimidate and/or threaten voters for voting or attempting to vote." *Ariz. Democratic Party v. Ariz. Republican Party*, 2016 U.S. Dist. LEXIS 154086, at *15 (D. Ariz. Nov. 4, 2016). The Court denied the injunction. *Id*. at *42-43.

In addition, because Plaintiffs' proposed injunction singles out the activity of video recording drop boxes it is a content-based restriction and is therefore subject to strict scrutiny. *See Ariz. Broads. Ass'n v. Brnovich,* 2022 U.S. Dist. LEXIS 163140, at *6 (D. Ariz. Sep. 9, 2022) ("Plaintiffs next argue that HB2319 is a content-based restriction and is therefore subject to strict scrutiny. The Court agrees. HB2319 singles out the activity of video recording law-enforcement activity, and in doing so, it 'singles out specific subject

matter for differential treatment.'") (citing *Reed v. Town of Gilbert*, 576 U.S. 155, 166 (2015), *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2346 (2020)).

For a regulation subject to strict scrutiny to be upheld, it must be "necessary to serve a compelling state interest" and "narrowly drawn to achieve that end." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). "[E]ven then the law must restrict as little speech as possible to serve the goal." *Turner Broad. Sys., et al. v. Fed. Commc'n Comm'n, et al.*, 512 U.S. 622, 680 (1994).

Here, the injunction that Plaintiffs seek sweeps far too broadly to survive this test. For example, they seek to prohibit Defendants from "Gathering in groups of more than two individuals within 250 feet of drop boxes", taking pictures of individuals delivering ballots to drop boxes (from any distance), or posting online images and recordings of activities at drop boxes. ER 166. Plaintiffs should be careful what they wish for, if taking pictures of those delivering ballots to drop-boxes is voter intimidation, then the Washington Post, the Daily Beast, and ABC 15 are all guilty.

For example, in a recent article,[2] the Washington Post posted a video of an individual depositing ballots in a drop box, along with extensive commentary on what the paper thinks the video does or does not show. The depositor's face and vehicle are clearly visible.

In another recent article, the Daily Beast posted a picture of a voter dropping a ballot in the drop box along with commentary.[3] Her face is also visible.

And in a recent story,[4] the channel ABC 15 showed video of both voters (some with faces obscured and some not) and drop box watchers along with extensive commentary.

---

[2] *See* https://www.washingtonpost.com/politics/2022/10/20/arizona-ballot-drop-boxes/ (last accessed 10/31/2022).
[3] *See* https://www.thedailybeast.com/doj-alerted-to-creepy-surveillance-attempt-at-maricopa-county-arizona-drop-box
[4] *See* https://www.abc15.com/news/political/elections/intimidation-complaint-claims-voter-was-filmed-accused-of-being-mule-at-mesa-dropbox (last accessed 10/31/2022)

These media stories have been mostly hostile to Defendants' views on election integrity. Yet Defendants have every bit as much a right to photograph the same activities that reporters routinely photograph and give their side of the story by commenting on that activity on social media. This element of the proposed injunction is both overly broad and yet fatally underinclusive.

Further, it is the prerogative of the Arizona legislature, not Congress, to regulate the distance others must maintain from voters seeking to cast a ballot. *See Mi Familia Vota v. Hobbs*, 977 F.3d 948, 954 (9th Cir. 2020) ("the Supreme Court's election law jurisprudence counsels for deference to politically accountable state officials charged with the responsibility for conducting elections."). The Arizona legislature has seen fit to prohibit the taking of photographs within 75 feet of the polls. ARS 16-515(G). It has not seen fit to apply this restriction to the area of surrounding drop boxes. Arizona's legislature was free to strike this balance. Additionally, it should be noted that even when a **state** makes such a law (which Arizona has not done), "[a]t some measurable distance from the polls, of course, governmental regulation … could effectively become an impermissible burden[.]" *Burson v. Freeman*, 504 U.S. 191, 210 (1992). Unlike the federal laws at issue in this case, Arizona law contains a specific time, place, and manner limitations - it limits photography within a defined number of feet (75) from a defined location (the polls). Unlike those federal laws, which do not purport on their face to prohibit photographing voters at all, Arizona law is narrowly tailored and specific. It passes constitutional muster and should be treated with deference.

In sum, with this item of their injunction, Plaintiffs ask this Court to legislate that 75 foot limit be extended to cover the area around drop boxes. This it may not do.

# SECTION II
**DEFENDANTS' PROPOSED ORDER AND THE PARTIES' POSITIONS**

**Pursuant to the stipulation of the parties it is ordered that, from this date and time, through the close of the polls on election day, Defendants and persons over whom they have actual control (collectively "Defendants") shall not, while monitoring a drop box:**

I.     **(a) Intentionally approach within 75 feet of the drop box, or (b) intentionally follow individuals delivering ballots to the drop box when such individuals are not within 75 feet of a drop box.**

Plaintiffs were agreeable to this term.

II.     **Unless spoken to or yelled at first, speak to or yell at an individual who that Defendant knows is (a) returning ballots to the drop box, and (b) who are within 75 feet of the drop box.**

Plaintiffs indicated they needed to think about this term.

III.     **(a) Openly carry firearms within 250 feet of the drop box, or (b) visibly wear body armor within 250 feet of the drop box. But a Defendant shall not be in breach of this order if they reveal any firearm or body armor by accident. Defendants shall not instruct any person to violate this rule.**

Plaintiffs were agreeable to this term.

IV.     **Intentionally come within 75 feet of the entrance to a building where a drop box is located.**

Plaintiffs were agreeable to this term.

**Pursuant to the stipulation of the parties it is further ordered as follows:**

I.     **Defendants shall, within one business day of the date of this order: Post the following statement in a conspicuous place on Clean Elections USA's website and the Truth Social page, @TrumperMel:**

*"A person who knowingly collects voted or unvoted early ballots from a person that is not a family member, household member or caregiver is guilty of a class 6 felony. ARS 16-1005(H). However, it is not a crime to collect voted or unvoted early ballots from a family member, household member or someone to whom they are a caregiver and deposit them in a drop box. ARS 16-1005(I)."*

**However, this shall not prohibit Clean Elections USA from changing its name or the domain of its website pursuant to an agreement with Clean Elections.**

**Defendants shall also, within one business day of the date of this Order, place (a) a copy of this Order in a conspicuous place on the Clean Elections USA website along with a request that all drop box monitors abide by it, and (b) a link to this Order on the Truth Social page, @TrumperMel along with a request that all drop box monitors abide by it. However, this shall not prohibit Clean Elections USA from changing its name or the domain of its website pursuant to an agreement with Clean Elections.**

Plaintiffs were agreeable to this in concept but had some undefined issues with the wording.

**II.    No person who has notice of this Order shall fail to comply with it, nor shall any person subvert the injunction by sham, indirection, or other artifice. Notwithstanding, Defendants shall not be liable for the acts of persons over whom they lack actual control.**

Defendants and Plaintiffs largely agree on this point but there were some issues with the precise wording that remain to be worked out.

**III.   This stipulated order shall go into effect immediately and remain in effect through the close of the polls on election day, 2022.**

Defendants and Plaintiffs did not discuss this point. However, Defendants note that the time period for a TRO cannot exceed 14 days. FRCP 65(b)(2).

**IV.   Defendants' agreement to the entry of this order shall not be construed as an admission by Defendants or a finding by this Court that they have engaged in any of the activities this order prohibits. This order shall not be presented to a jury.**

Plaintiffs thought they would agreeable to this point but needed more time to think about it.

**V.    This case is hereby dismissed, without prejudice. Each party to bear their own fees and costs. This Court shall retain jurisdiction to enforce the terms of this Order.**

Plaintiffs were not agreeable to this point.

Respectfully submitted this 1st day of November, 2022 by

                                        /s/Alexander Kolodin
                                        **Davillier Law Group, LLC**

CERTIFICATE OF SERVICE

I hereby certify that on November 1st, 2022, I electronically submitted the foregoing document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record.

By: /s/Alexander Kolodin