IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| STATE OF MISSOURI ex rel. ERIC S. SCHMITT, Attorney General, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, *et al.*, <br><br> *Defendants*. | No. 3:22-cv-01213-TAD-KDM |

**FEDERAL DEFENDANTS' REPLY IN SUPPORT OF THEIR
CORRECTED MOTION FOR PARTIAL STAY OF OCTOBER 21, 2022 ORDER
PENDING PETITION FOR WRIT OF MANDAMUS**

The Federal Defendants have moved this Court (ECF 92 ("Stay Mem.")) for a partial stay of the Depositions Order (ECF 90) pending disposition of their petition for a writ of mandamus in the United States Court of Appeals for the Fifth Circuit (docketed as No. 22-30697), given that if the petition were granted, it would result in a vacatur of that order insofar as it compels the expedited depositions of the White House Director of Digital Strategy, the Surgeon General, and the Director of the Cybersecurity and Infrastructure Security Agency (CISA).

Contrary to Plaintiffs' contention (ECF 100 ("Opp.") at 1), the requested stay would not be "indefinite," but instead would simply preserve the status quo long enough for the Fifth Circuit to decide the mandamus petition in an orderly fashion. All the relevant equitable factors favor such a stay.

1

### 1. Denying A Stay Will Irreparably Harm The Federal Defendants

Without the requested stay, the challenged depositions may take place before the Court of Appeals has the opportunity to rule on the mandamus petition. That would moot the petition—itself an irreparable harm that Plaintiffs do not address, *see* Stay Mem. 3—and subject several high-ranking government officials to the precise burdens—the significant diversion of time and attention attendant to any deposition of high-ranking government officials—that the *Morgan* doctrine, as urged in the mandamus petition, seeks to avoid. Stay Mem. 3-5. The doctrine is rooted in, among other concerns, the separation of powers, which is directly at issue here because one of the depositions at issue would be of a senior White House official. *See generally Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367 (2004).

Contrary to Plaintiffs' contention (Opp. 2-3, 6), the 18-day extension of the deadline for completing the authorized depositions that this Court has allowed based on the parties' agreement (ECF 99) cannot dispense with the practical need for a stay. Even under the modified schedule, Federal Defendants face the serious prospect that they will have to prepare for and conduct the challenged depositions before the Fifth Circuit rules on the mandamus petition. That risk is avoidable and unnecessary.

Plaintiffs do not advance their argument by asserting (Opp. 6) that the Fifth Circuit would have "ample time to adjudicate a mandamus petition" before December 1, 2022, the currently scheduled date for the first of the challenged depositions. If Plaintiffs were correct, then a stay pending resolution of that petition would not prejudice Plaintiffs. Denial of a stay might have a practical effect, however, if it operates to force the Court of Appeals to issue a decision on the petition, or a delayed stay motion, on a compressed schedule. Plaintiffs do not explain why the public interest favors that result, which would of course impose the irreparable harm on Defendants

that underlies the stay request, by requiring the three officials in question to prepare for and then attend the challenged depositions.

Indeed, Plaintiffs go so far as to depict the stay motion as "premature" (Opp. 2-3), because December 1 is now a month away. But their assumption that it would be preferrable to entertain a stay motion concerning the challenged depositions closer in time to their schedule dates in December cannot be correct: That approach would create emergency conditions gratuitously, by reducing the time between a stay request and the challenged depositions. That would disrespect the Court of Appeals' admonition against litigant-made emergency motions practice. *See* Fifth Cir. Internal Operating Procedure 27.3 (typically, motions seeking relief "before the expiration of 14 days after filing" should not be filed absent "an emergency sufficient to justify disruption of the normal appellate process"); *cf. Murphy v. Collier*, 139 S. Ct. 1475, 1477 (2019) (statement of Kavanaugh, J., joined by Roberts, C.J., respecting grant of stay application) (timing of application "was relevant to the assessment of the equities for purposes of the stay") (citing *Hill v. McDonough*, 547 U.S. 573, 584 (2006)).

Also mistaken (Opp. 4-5) is Plaintiffs' argument that the burdens on the Federal Defendants of preparing for and then conducting the challenged high-ranking officials' depositions are simply "ordinary discovery burdens" of the sort usually seen in civil suits (an argument which Plaintiffs rest on cases outside the high-ranking government official deposition context at issue here). Such high-ranking official depositions are far outside the norm: The Fifth Circuit agrees with other circuits that "top executive department officials should not, *absent extraordinary circumstances*, be called to testify regarding their reasons for taking official actions." *In re Office of Inspector Gen., R. R. Ret. Bd.*, 933 F.2d 276, 278 (5th Cir. 1991) (quoting *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985) (citing *United States v.*

3

*Morgan*, 313 U.S. 409, 422 (1941) (*Morgan II*)), and directing district court to "remain mindful of the requirement that exceptional circumstances must exist before the involuntary depositions of high agency officials are permitted"); *see also Cheney*, 542 U.S. at 386 (cautioning against discovery that threatens to "disrupt the functioning of the Executive Branch"). Again, the officials in question should not be subjected to the diversion of time and energies entailed by preparing for and then sitting for extraordinary depositions until the Fifth Circuit has had a chance to decide the Federal Defendants' mandamus petition on an appropriate timetable.

### 2. The Mandamus Petition Is Likely To Succeed On The Merits

The Federal Defendants' mandamus petition has a strong likelihood of success on the merits as to each of the three challenged depositions, especially given the considerable body of decisions from the Fifth Circuit and from other circuits granting mandamus petitions to preclude depositions of similarly high-ranking government officials absent "exceptional circumstances" missing here. Stay Mem. 5-10.

Plaintiffs have not met their burden to show such circumstances, and their contrary contentions (Stay Opp. 4-19) are incorrect. The Fifth Circuit has recognized that "[a]gency leaders often send and receive correspondence relative to their actions," including actions potentially affecting private parties, but that "does not of itself subject them to the burdens of litigation discovery." *In re Fed. Deposit Ins. Corp.* (*"F.D.I.C."*), 58 F.3d 1055, 1061 (5th Cir. 1995). So Plaintiffs cannot meet their burden by relying on mere participation in correspondence and meetings, but instead must show the officials in question have unique "first-hand knowledge related to the claims being litigated that is *unobtainable from other sources*," *In re Bryant*, 745 F. App'x 215, 218 n.2 (5th Cir. 2018) (per curiam), as revised (Nov. 30, 2018) (unpublished) (emphasis added).

Plaintiffs also assume that the very nature of these officials' high-ranking position makes

4

them sufficiently knowledgeable about the "full range" of agency activities. Stay Opp. 14. But authorizing the deposition of every high-ranking official on that basis would make such depositions the norm rather than the extremely limited exception they must be, if each official is to carry out managerial responsibilities free from the "threat of having to spend their personal time and resources preparing for and sitting for depositions could hamper and distract" from performance of official duties. *In re U.S. Dep't of Educ.*, 25 F.4th 692, 705 (9th Cir. 2022).

Plaintiffs' effort to meet the exceptional circumstances requirement by showing these officials' knowledge is unique, and thus "unobtainable from other sources," *Bryant*, 745 F. App'x at 218 n.2, ultimately hinges on conjecture and not on the actual record already compiled through expedited written discovery. As to each of the three high-ranking officials at issue here, Defendants described alternative sources of information and less burdensome formats for obtaining information. Stay Mem. 7-10. In retort, Plaintiffs offer only speculation that those alternative sources might not have sufficient knowledge as to each and every communication about which Plaintiffs already have been provided e-mails or other records.

For example, as an alternative to CISA Director Easterly, Defendants offered the Associate Director of Election Security and Resilience at CISA, Geoffrey Hale, and Plaintiffs cannot deny that Defendants have produced many e-mails between Mr. Hale and social-media platforms. Stay Mem. 8. Instead, Plaintiffs attempt to fault Defendants for the absence of a showing that "Hale has knowledge of *all* the meetings and communications" that Plaintiffs paint as "at the heart of the discovery sought." Stay Opp. 14 (emphasis added). But that simply repeats Plaintiffs' supposition that because Director Easterly holds a higher-ranking office than Hale, such that some CISA personnel who do not "report back to Hale" report to Director Easterly, she "has . . . knowledge" that Mr. Hale does not—a notion which, if accepted, would make invariably make high-ranking

depositions the garden-variety norm rather than the exception.

Additionally, as to Dr. Murthy, Plaintiffs entirely ignore Defendants' proposed alternative witnesses: Max Lesko, Dr. Murthy's chief of staff and a custodian in the case; and Eric Waldo, who attended the meeting with Dr. Murthy identified by Plaintiffs.

Moreover, as to Director Flaherty, Plaintiffs again have not met their burden to show that the deposition is necessary in light of available alternative sources of the information they seek and alternative formats for obtaining such information. The Stay Opposition only underscores the availability of alternative sources: Plaintiffs cite (Stay Opp. 8-10) various e-mails that include Director Flaherty *and other federal officials*—including Eric Waldo, one of the witnesses Defendants offered as an appropriate alternative for Dr. Murthy. Plaintiffs' notion that a deposition of Director Flaherty should be the first resort rather than the last resort is especially mistaken in light of the separation of powers problems inherent in subjecting a senior White House official to deposition. *See, e.g.*, *Cheney*, 542 U.S. at 390.

Furthermore, Plaintiffs argue (Stay Opp. 18-20) that the witnesses in dispute are not sufficiently high-ranking to warrant protection under the *Morgan* doctrine, based on their notion that the doctrine's protections are limited to those of Cabinet rank and to "heads of *independent agencies*" (Stay Opp. 19). But that is incorrect. The Director of the Office of Digital Strategy is a Deputy Assistant to the President, and a senior White House official. *See Alexander v. FBI*, 186 F.R.D. 1, 3-4 (D.D.C. 1998) (applying *Morgan* doctrine to Assistant to the President); *United States v. Newman*, 531 F. Supp. 3d 181, 190-191 (D.D.C. 2021) (applying doctrine to Deputy Assistant to the President). For their part, the CISA Director and the Surgeon General are Senate-confirmed officials who lead statutorily created entities within Cabinet departments—CISA, with some 2,600 employees and an annual appropriation exceeding $2.5 billion, and the Commissioned

Corps of the U.S. Public Health Service, a uniformed service comprising more than 6,000 officers. Heads of government offices, including those of sub-Cabinet rank, fall within the core protection of the doctrine restricting depositions of high-level officials. *See, e.g.*, *F.D.I.C.*, 58 F.3d at 1060 (Directors of the Federal Deposit Insurance Corporation); *In re United States*, 985 F.2d 510, 512-513 (11th Cir. 1993) (per curiam) (FDA Commissioner).

Indeed, for good reason, in the Depositions Order, this Court already determined, over Plaintiffs' contrary argument in the October 14, 2022 Joint Statement (ECF 86 at 37-39) that the three officials at issue here are high-ranking for purposes of the *Morgan* doctrine (ECF 90 at 12 (White House Digital Director); *id.* at 20 (CISA Director); *id.* at 23 (Surgeon General)). As Federal Defendants noted (ECF 86 at 50), other courts likewise have concluded that high-ranking agency officials beneath Cabinet rank also warrant protection from depositions—conclusions Plaintiffs have simply ignored rather than refuted. *See, e.g.*, *United States v. Sensient Colors, Inc.*, 649 F. Supp. 2d 309, 321 (D.N.J. 2009) (EPA Regional Administrator for Region 2, who "reports directly to the EPA Administrator, who in turn reports directly to the President of the United States"); *Church of Scientology of Boston v. IRS*, 138 F.R.D. 9, 12 (D. Mass. 1990) (director of Exempt Organizations Technical Division, National Office of the Internal Revenue Service).

### 3. The Requested Stay Would Not Meaningfully Prejudice Plaintiffs, And The Equitable Balance Favors That Relief

The requested stay would not meaningfully delay Plaintiffs' litigation of their preliminary injunction motion. Several depositions authorized under the Depositions Order are not challenged in the mandamus petition, and will go forward, and postponing the three that are the subject of the mandamus petition will not work any meaningful harm to Plaintiffs' ability to supplement their preliminary injunction motion. Stay Mem. 10-11.

Plaintiffs waited until long after the underlying social-media platform content moderation episodes they complain about before commencing this action, and then waited nearly six additional weeks to seek a preliminary injunction. Given that delay, a short pause on the three depositions challenged in the mandamus petition will not put Plaintiffs to any significant disadvantage, but instead would benefit the parties and the courts by allowing the Fifth Circuit to rule on the petition free of the unnecessary risk that any relief would become moot through occurrence of the challenged depositions.

Given the large volume of written discovery Plaintiffs have already obtained, they are unable to articulate any cognizable harm to their ability to litigate their preliminary injunction motion from a stay of the challenged depositions pending mandamus. Instead they rely (Stay Opp. 20) on the assertion that irreparable harm results whenever the First Amendment is violated. But the irreparable harm pertinent to deciding the stay motion is only the harm from postponing the three challenged depositions until the mandamus petition is decided, not the harm Plaintiffs contend would result if a preliminary injunction were denied. ECF 11-1 at 56.

Importantly, Plaintiffs also make no showing that the public interest, including the judicial interest in the courts' orderly docket management, would benefit from denial of the requested stay. Stay Mem. 12. Rather, and as explained above, that interest would be promoted by postponing the depositions challenged so that the Fifth Circuit has sufficient time to address the important question the mandamus petition presents in an orderly fashion.

\* \* \* \* \*

For the reasons given above and those given in the opening memorandum, the Federal Defendants respectfully request that this Court stay the depositions of Surgeon General Murthy, Director Easterly, and Director Flaherty until resolution of the mandamus petition.

Dated: November 1, 2022    Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

JAMES J. GILLIGAN
*Special Litigation Counsel, Federal Programs Branch*

<u>/s/ Indraneel Sur</u>
ADAM D. KIRSCHNER (IL Bar No. 6286601)
*Senior Trial Counsel*
KYLA SNOW (OH Bar No. 96662)
INDRANEEL SUR (D.C. Bar No. 978017)
KUNTAL CHOLERA (D.C. Bar No. 1031523)
*Trial Attorneys*
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, NW
Washington D.C. 20005
Tel: (202) 616-8488
indraneel.sur@usdoj.gov

*Attorneys for Defendants*